Decided 16 June, 1902.

## PAYTON v BURNS.

[69 Pac. 134.]

RECORDING CLAIMS IN UNORGANIZED MINING DISTRICTS.

Under Rev. Stat. U. S. § 2324, providing that the miners of each mining district may make regulations regarding the recording of claims, etc., and Hill's Ann. Laws, § 3831, providing that, when a mining district has been organized, the claims therein shall be recorded, claims in a locality not an organized district were not required to be recorded.

From Baker: ROBERT EAKIN, Judge.

This is a suit by E. M. Payton and M. A. Baisley against C. R. Burns to determine an adverse interest in realty. It is alleged in the complaint that plaintiffs are citizens of the United States, above the age of twenty-one years, and having discovered a vein of quartz in place, bearing gold, they on March 7, 1898, located a mine thereon, 1,500 feet in lengtth along the lode, and 300 feet in width on each side thereof, which they named the "Independence Quartz Claim No. 1," situated on unsurveyed public lands in Baker County, Oregon, but not in an organized mining district, which claim was distinctly marked on the ground, so that its boundaries could be readily traced, and they also posted a notice thereon describing the premises by metes and bounds, and ever since that time have been, and now are, the owners of said claim, and entitled to and in the possession thereof, and, each year since said location was made, have expended in improvements made thereon a sum exceeding $100; that the defendant asserts some claim

thereto adverse to theirs, the precise nature of which is unknown to them, but, whatever it is, it is wrongful and fraudulent. For a second cause of suit, plaintiffs allege that on March 8, 1898, they made another location, which they designated as "Independence Quartz Claim No. 2," the averments in respect thereto being substantially the same as those referring to No. 1, and pray that defendant be required to set forth the nature and extent of his claim, and that it may be decreed invalid.

The answer denies the material allegations of the complaint, and alleges that on July 10, 1896, A. J. Vincent and Thomas McArdle, being citizens of the United States, and having discovered a vein of quartz in place, bearing gold, located a mine thereon, known as the "Vincent," 1,500 feet in length and 600 feet in width, and marked the boundaries thereof so that they could be readily traced on the ground, and posted a location notice thereon; that at the time of plaintiffs' pretended discovery, designated as "Independence No. 2," the whole of said ground was the exclusive property of Vincent and McArdle, subject only to the paramount title of the United States; that about June 1, 1898, McArdle, having made another discovery of mineral in a quartz vien on the ground, called the "Vincent," located a mine thereon known as the "Humbug," the boundaries of which were definitely located on the ground coincident with the Vincent, and posted a notice thereon, which claim, by mesne conveyances, became the property of the defendant, who has complied with all the requirements of law in respect thereto. The answer also contains similar averments as to the discovery of another quartz vein by Vincent and McArdle, bearing gold, and their location of a mine thereon July 10, 1896, known as the "Jojoe," 1,500 feet in length and 600 feet in width, the boundaries of which were distinctly marked on the ground, and at the time of plaintiffs' pretended location of the Independence all said land was the exclusive property of said discoverers, subject to the prior right of the general government; that on June 1, 1898, McArdle, having made another discovery of quartz

in place on said ground, bearing gold, located another mine thereon, known as the Snow Storm, which is identical with the Jojoe, the boundaries of which were distinctly marked on the ground, and, having posted a notice thereon, said claim, by mesne conveyances, became the property of the defendant, who had annually expended in making improvements thereon more than $100.

The reply having put in issue the allegations of new matter in the answer, the cause was referred to Herbert R. Hanna, who took the testimony, from which the court found, in effect, that the description of plaintiffs' alleged mines was too indefinite to entitle them to the relief demanded, and dismissed the suit, whereupon they appeal.          AFFIRMED.

For appellants there was a brief over the name of *Olmstead & Miller,* with an oral argument by *Mr. Martin L. Olmstead.*

For respondent there was a brief over the names of *H. E. Eastham,* and *Cullen & Dudley.*

MR. JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

The question presented is whether the location of plaintiffs' alleged mines, known as the "Independence" and the "Independence No. 2," was in fact distinctly marked on the ground where it is now claimed originally to have been made. J. C. Baisley, as plaintiffs' witness, testifies that in 1895 one Milton Garner located quartz mining claims on the land now in controversy; that he assisted him in marking the boundaries of his claims, and was acquainted with and knew the premises in dispute; that in 1896 Garner performed some assessment work on his claims, but not enough to satisfy the law's demands, and, having informed him that he did not intend to return thereto, the witness on March 7 and 8, 1897, as the agent of his wife, the plaintiff M. A. Baisley, and of her sister, the plaintiff E. M. Payton, located the claims in question, which were designated the "Independence" and the "Inde-

pendence No. 2," the latter being an extension of the former, and each 1,500 feet in length, and 300 feet in width on either side of the lode; that at the time he located these claims he discovered the several corners thereof as marked by Garner, and blazed a few trees, indicating the boundaries, and posted on each claim a notice, copies of which were recorded March 13, 1897, in the Baker County records of quartz claims, Book K, pages 87 and 88, respectively, wherein the boundaries of the Independence and Independence No. 2 were described, respectively as follows:

### "INDEPENDENCE.

"Commencing at a shaft where this notice is posted, running 1,500 feet in a southerly direction to a stone monument, being end line; thence E. 300 ft. to stone monument; thence northerly 1,500 ft. to stone monument, being N. E. corner of south line; thence N. W. 600 ft. to monument of stone, being N. W. corner of west line; thence westerly 1,500 ft. to stone monument, this being S. W. corner; thence back to beginning. Located on Rock Creek, on Chloride Mountain.

### "INDEPENDENCE No. 2.

Beginning at the shaft where this notice is posted, running 1,500 ft. on the vein to stone monument in a northerly direction to stone monument, being north end line; thence westerly 300 ft. to stone monument, this being N. W. corner; thence southerly 1,500 feet to monument, being S. W. corner of west side line; thence S. W. 600 ft. to stone monument, S. W. corner of south line; thence N. W. E. 1,500 ft. to stone monument, being N. W. E. corner; thence back to beginning. Located on Rock Creek, west of Chloride Mine, near 1 mile north of Independence No. 1."

The witness further testifies that, not having evidenced the boundaries of these claims with sufficient care at the time they were located, he returned to the premises in June, 1897, and definitely marked the lines on the ground so that they could be readily traced, blazing nearly every tree that stood in the center of the claims, and also renewed all the mounds

41 OR.— 28.

of rock that Garner had built.   He states on his cross-examination that he also located another quartz mining claim in his own name and that of his son, which was known as the Red Bird, in speaking of which, in reply to the question, "Where was the Red Bird located?" he says, "Well, it was right on the southerly claim, joined right onto the southerly claim,—of these claims that are in litigation,—and run along west towards the creek." Further in his cross-examination he was asked, "When you made the Red Bird location, where did you put the notice?" to which he replied, "I posted the notice on a little mound of rock just at the upper end of this hole or shaft that was started on the Independence at the southwesterly end, in a little mound of rock." In answer to the inquiry when the Red Bird was located, he says: "I don't know anything about the time I made the location for my son, and told him, if he wanted it, to go ahead and look after it. I don't know the year or the time now. * * Q. Do you know whether it was summer or winter that you located the Red Bird? A. I think it must have been some time in the summer, because the ground was bare when I was up there, I think. I told him there was such a location there, because I wrote the notice on it." The location notice of this mine having been recorded, a certified copy thereof was introduced in evidence, and is as follows:

"RED BIRD.

Location of Quartz.   That we, the undersigned, have located 1,500 ft. of this vein of quartz, with 600 ft. in width, described as follows: Commencing at or near where this notice is posted, at west end line of Cordell mine, running westerly 1,500 ft. to stake; thence N. 300 ft. to stake; thence S. 600 ft. to stake; thence W. 1,500 ft. to stake; thence back to beginning. This will be known as the 'Red Bird Mine.' Located near head of Rock Creek, Baker County, Oregon.   Located July 7, 1899.

J. C. BAISLEY,
O. BAISLEY.

Recorded September 18, 1899, at page 387, vol. M, of quartz locations of said county."

The testimony introduced by the defendant shows that on August 12, 1899, he purchased the quartz claims known as "Snow Storm," "Humbug," and "Rising Sun," and secured a deed therefor; that these claims extend in a right line from a point north of east to a point south of west, a distance of 4,500 feet, and 600 feet in width; and that the Snow Storm as far as we are able to discover, is nearly identical with the Independence, and the Humbug with the Independence No. 2, as claimed to have been located by plaintiffs. It would appear that what the plaintiffs now claim to be the Independence and the Independence No. 2 were located for them by J. C. Baisley as the Cordell and the Cordell No. 1, while they insist that the latter claims were located about two miles from the former.

J. C. Landreth, as defendant's witness, testifies that he found posted on the Humbug claim a notice of location of the Cordell quartz mining claim, made September 15, 1897, by E. M. Payton, which having been introduced in evidence, J. C. Baisley admitted having written it, but claimed he did not post it where it was found, and intimated that it was put there by others. The testimony introduced by the defendant shows that along the boundaries of what is now insisted upon by plaintiffs as their mining claims the pine trees were blazed, and there was originally written thereon the word "Cordell," as indicating a quartz mining claim of that name, and that the resinous substance exuding from the trees covered such word, and over which was written the word "Independence," evidently of latter date. The defendant and his witnesses Emery and W. M. Proebstel, having seen the markings on these trees, testified that, in their opinion, the person who wrote the "Cordell" notice found by Landreth, posted on the Humbug mining claim, also inscribed on the pine trees adverted to the words "Cordell" and "Independence." J. C. Baisley, appearing as plaintiffs' witness in rebuttal, testified on cross-examination as follows: "Q. You don't know anything about the Red Bird notice, do you? A. No, sir; nothing about it. Q. You did put it up? A. I understand my son put it up. Q. You never put up the Red Bird location notice?

A. I have no recollection of it. Q. You didn't testify the other day that you put it up? A. If I remember right, I said my son put it up. Q. Did you ever hear of the Red Bird location before? A. I had several talks with him in regard to it, and he told me he had a location in there; that he himself had located another claim; and he told me that he had made some locations under the name of S. O. Baisley."

The *locus in quo* not being in an organized mining district, it was unnecessary, under the law then in force, to record a notice of location of a quartz mining claim; the limits of the boundaries thereof being sufficient, when they are definitely marked on the ground so that they can be readily traced: Rev, Stat. U. S. § 2324; Hill's Ann. Laws, § 3831; *Allen* v. *Dunlap,* 24 Or. 229 (33 Pac. 675). Plaintiffs having recorded copies of their notices of the claims designated as the "Independence" and the "Independence No. 2," it would be impossible, from an inspection of such notices, to determine with any degree of certainty the location of their alleged mining claims. If the testimony of J. C. Baisley is to be believed, however, the ambiguity of the notices, which places the claims about a mile apart, is removed, and the description rendered certain, by his declaration that he distinctly marked the location on the ground, so that their boundaries could be readily traced. He, as plaintiffs' agent and servant, performed some labor on these claims, it is admitted; but it may well be doubted if, at the time the work was done, the claims were held under the names specified in the notices as recorded. We think a careful examination of the testimony and exhibits will show that he, as agent of the plaintiff, E. M. Payton, was claiming the premises as the Cordell and the Cordell No. 1 when the notice of the Red Bird mining claim was posted, June 7, 1899, fixing one of its boundaries as coincident with the Cordell mine, when, if Baisley's testimony is true, it should have been the Independence, the notice of which was recorded March 13, 1897, or more than two years prior thereto. It seems improbable that he could have forgotten this fact, the force of which he sought to avoid in his cross-examination in re-

buttal by saying, in effect, that he had no recollection of posting the notice of location of the Red Bird, when on his prior cross-examination he stated that he had posted such notice. The fact that the word "Cordell," as marked on the pine trees on the boundaries of the claims in controversy, was covered with resin, and the word "Independence" written after the exudation had flowed over the former word, seems to afford indisputable evidence that the latter locations are sought to be substituted for the former. It will be observed that J. C. Baisley's statement concerning the location of the Red Bird mine is very contradictory, and, as the plaintiffs' right must depend upon his testimony, we think the maxim, *Falsus in uno, falsus in omnibus,* is properly applicable thereto. Believing that the claim to the premises under the names of "Independence" and "Independence No. 2" is a fabrication, it follows that the decree is affirmed.

AFFIRMED.

Decided 3 November, 1902.